IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
FILE NO: 1:22 CV 43

| | |
|---|---|
| BRETT FOUST, ) | |
|   Plaintiff, ) | |
| ) | **Complaint** |
| v. ) | **(Jury Trial Requested)** |
| ) | |
| CITY OF ASHEVILLE, ) | |
|   Defendant, ) | |

Plaintiff Brett Foust, by and through the undersigned counsel and pursuant to Rule 3 of the Federal Rules of Civil Procedure, hereby complains of the defendant City of Asheville by making the allegations contained herein.

## **PARTIES AND JURISDICTION**

1. Plaintiff Brett Foust ("Foust" or "Sergeant Foust") is a resident and citizen of Haywood County, North Carolina located in the Asheville division of the District Court for the Western District of North Carolina.

2. Defendant City of Asheville ("the City") is a municipal corporation organized under Chapter 160A of the North Carolina General Statutes and chartered by the State of North Carolina. Defendant City operates and maintains a law enforcement agency known as the City of Asheville Police Department ("the APD"). The City may sue and be sued pursuant to N.C. Gen. Stat. § 160A-11 for the legal claim set out herein.

3. The City does not have governmental immunity for the legal claim alleged herein.

4. Based on information and belief, the City has, pursuant to N.C.G.S. § 160A-485, waived its governmental immunity through the purchase of liability insurance and/or through the use of a funded reserve.

5. Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 38 U.S.C. § 4323(b).

6. Pursuant to 28 U.S.C. § 1391(b)(2), this Court is the proper venue since a substantial part of the events or omissions giving rise to the allegations contained herein occurred in this judicial district.

## FACTS

### Foust Serves His Community and Country

7. Foust has wanted to be a law enforcement officer since high school. He applied for and received a North Carolina Police Corps Scholarship, which he used to obtain a Criminal Justice Bachelors in Science degree from Western Carolina University.

8. After graduation from college and completion of Basic Law Enforcement Training, Foust started his career at the Pitt County Sheriff's Office where he served as a patrol deputy, a domestic violence unit deputy, and a narcotics detective. He also served as a member of SWAT and the Honor Guard. He further received a United States' Marshal's Service Certificate of Appreciation and the Organized Crime Drug Enforcement Task Force Case of the Year.

9. In his law enforcement career, Foust has completed thousands of hours of law enforcement related training. He holds Advanced Law Enforcement

2
Case 1:22-cv-00043-MOC-WCM   Document 1   Filed 02/24/22   Page 2 of 20

Certificates from North Carolina Sheriff's Standards Commission and the North Carolina Education and Training Standards Commission.

10. In December 2000, Foust enlisted in the North Carolina National Guard and completed officer training school. He served overseas in Iraq for Operation Iraqi Freedom from 2005-2006, in Afghanistan for Operation Enduring Freedom in 2010, and in Guantanamo Bay, Cuba also in support of Operation Enduring Freedom in 2016.

11. Foust has held numerous leadership positions in the National Guard, including Platoon Leader, Company Commander, Operations Officer, and Provost. The National Guard has selected him for battalion command and promotion from Major to Lieutenant Colonel.

12. The National Guard has bestowed numerous awards and decorations on Foust for his service, including the Bronze Star Medal, the Meritorious Service Medal, the Army Commendation Medal, the Army Achievement Medal, the Army Reserve Components Achievement Medal, the Outstanding Volunteer Service Medal, the Combat Action Badge, the North Carolina Service Ribbon, and the North Carolina State Active Duty Ribbon.

<u>Foust Joins APD</u>

13. Foust joined the APD in September 14, 2014, as a Patrol Officer. The APD promoted Foust to Sergeant in 2019.

14. While with the APD, he also taught – and currently teaches – Basic Law Enforcement Training and National Park Service Training at multiple local

community colleges.

15. In August 2020, the APD asked that he become the Field Training Officer ("FTO") Sergeant for his district in recognition of his strong work performance and experience as a trainer of police officers. Sergeant Foust readily accepted the new position as it was an honor to serve in that capacity. The position resulted in an increase in pay to Sergeant Foust.

16. The APD has further selected him to serve on the Buncombe County Anti-Crime Task Force and bestowed on him multiple commendations and awards, including Officer of the Month for July 2020.

17. The APD has never previously written up or otherwise disciplined Sergeant Foust except as set out herein.

<u>Sergeant Foust Helps with 2020 COVID Response and Protests</u>

18. On February 20, 2020, and with approval from his chain of command, Sergeant Foust registered to attend the prequalification for Firearms Instructor training to take place on August 17, 2020, which was later rescheduled to October 26, 2020. This training was approved by the chain of command with the intent that Sergeant Foust become a certified Firearms Instructor.

19. In April 2020, Sergeant Foust was involuntarily activated by the North Carolina National Guard to assist the North Carolina Department of Health and Human Services with their response to the COVID-19 pandemic. He helped develop a contact tracing program. His served from April 20, 2020, to May 31, 2020.

20. He returned to the APD on May 31, 2020, and was immediately called

upon to assist with the protests that occurred in Asheville in the summer of 2020 primarily as a chemical munitions officer. His command staff highly praised him for his service saying he "saved the day" for them. The APD selected him as the Officer of the Month for July 2020 because of this strong work performance at the protests.

21. Sergeant Foust was involuntarily recalled into service for the National Guard on September 23, 2020, with orders to remain in service until December 31, 2020. During this involuntary service, he managed foodbank operations to those in need in Western North Carolina. He proudly oversaw the distribution of ten million pounds of food and supplies.

22. Although his National Guard service began on September 23, 2020, Sergeant Foust continued to work at the APD the week of September 23, 2020, to aid the APD in his transition away from the APD to attend to his military duties.

23. His military service also fell during the scheduled prequalification for firearms instructor training on October 26, 2020. Sergeant Foust still wanted to attend prequalification so he could attend firearms instructor training in 2021 after his military leave. He spoke about attending the training with his chain of command and they all approved his attendance even though he was technically on military leave.

24. Sergeant Foust did in fact attend the prequalification on October 26, 2020, and did so on an unpaid, volunteer basis. He passed the prequalification and planned to attend the firearms instructor training to occur in 2021. The prequalification would be effective for one year.

### Chain of Command Changes and Discrimination Begins

25. In late September or early October, Captain Jackie Stepp assumed command over the Patrol Division thereby entering Sergeant Foust's chain of command.

26. Thereafter, the APD subjected Sergeant Foust to discriminatory, retaliatory, and harassing treatment because of his military service as set out below.

27. The first such discriminatory action Captain Stepp took against Sergeant Foust was removing him as FTO Sergeant, which resulted in a loss of the increased wages associated with that position.

28. Protests continued to occur in Asheville in the Fall of 2020 while Sergeant Foust was on military leave. Because of Sergeant Foust's strong work performance with the protests earlier in the year, the APD asked Sergeant Foust to help even while he was on military leave. Sergeant Foust readily agreed, wanting to help his fellow officers. He therefore spent approximately 20 hours over a period of weeks during this time helping the APD on an unpaid, volunteer basis.

29. While helping the APD at this time, Deputy Chief Mike Yelton, a superior officer in Sergeant Foust's chain of command, commonly referred to Sergeant Foust by the name of a sergeant who had been away on military leave for an extended period of time. Deputy Chief Yelton told Sergeant Foust that when this sergeant returned from military leave that he would put him on the less desirable night shift in retaliation for taking military leave.

30. Sergeant Foust also learned while at the APD around this time that Captain Stepp was displeased that Sergeant Foust had attended the prequalification on October 26, 2020.

31. In December 2020, the National Guard involuntarily extended Sergeant Foust's orders to March 30, 2021. Sergeant Foust, however, had been saving up leave with the National Guard and planned to take that leave so he could return to the APD in early March rather than March 30.

32. In late January, 2021, Sergeant Foust requested FBI LEEDA training upon his return for military leave. FBI LEEDA is an organization that provides law enforcement leadership training to rising leaders in law enforcement. The training was to take place locally on March 8, 2021, after Sergeant Foust returned from his abbreviated military leave.

33. Captain Stepp and Deputy Chief Yelton denied this training on January 28, 2021, explicitly because Sergeant Foust was "just returning to duty."

34. Sergeant Foust believed that the denial of this training constituted discrimination because of his military leave. He called and left a message with the City of Asheville Human Resources Director to file a complaint of discrimination. His message was never returned.

35. On February 4, 2021, Sergeant Foust emailed Chief David Zack requesting a meeting and complaining that he was being discriminated against because of his military leave in violation of law.

36. Chief Zack promptly responded and they agreed to meet for lunch on

February 10, 2021.

37. On February 9, 2021, Sergeant Foust requested firearms instructor training to start on September 27, 2021. This is the training for which he prequalified for the previous October.

38. Sergeant Foust's supervisor, Lieutenant Evan Coward, immediately approved the training on February 9, 2021, as such training had already been agreed upon in August 2020 when the prequalification was authorized. Deputy Chief Yelton and Captain Stepp had to also approve the training and did not immediately respond to the request.

39. Sergeant Foust and Chief Zack met on February 11, 2021, and they discussed Sergeant Foust's complaint. Sergeant Foust explained that he feared reprisal from Captain Stepp for his military service. Chief Zack, in response, stated that he "would not tolerate retaliation but that people will find a way to retaliate" and that Captain Stepp has trouble dealing with people.

40. Upon information and belief, Chief Zack took no actions to address Sergeant Foust's complaint of discrimination and fear of retaliation after this February 11, 2021, meeting.

41. On March 2, 2021, the National Guard involuntarily extended Sergeant Foust's military leave to April 30, 2021.

42. On the same day, March 2, 2021, nearly a month after his request to attend firearms instructor training approved by Lieutenant Coward, Captain Stepp and Deputy Chief Yelton denied the request stating that "we are not sending anyone

this year to this school." This denial meant that Sergeant Foust's prequalification would expire and that Sergeant Foust would have to prequalify again for firearms instructor training. The denial effectively meant that Sergeant Foust would not receive the firearms instructor training planned and approved in August 2020 before going on military leave and Captain Stepp entering his chain of command.

43. Sergeant Foust returned to the APD from military leave on May 10, 2021.

44. Around the time of his return from leave, Sergeant Foust asked that he be issued a vehicle with a protective cage so that he could safely transport arrestees. Because of APD staff shortages, there were many available vehicles as such vehicles are commonly used by patrol officers. Lieutenant Coward readily approved the request as did Captain Janice Hawkins. Just prior to picking up the vehicle, however, Captain Stepp interceded and denied him the vehicle. There was no reason stated for the denial nor was there a legitimate reason for the denial other than to retaliate against Sergeant Foust for taking military leave.

45. The next month, another patrol sergeant made the same request, and Captain Stepp granted it.

46. Captain Stepp's intercession and denial of a car with a cage immediately upon Sergeant Foust's return was the beginning of a series of discriminatory actions taken against Sergeant Foust taken over the next several months because of his military leave.

APD Conducts Baseless Investigations and Write-Ups

47. In the first four months of Sergeant Foust's return from military leave, the APD conducted seven different administrative investigations for events that occurred both before and after Sergeant Foust's military leave and issued four disciplinary actions against Sergeant Foust as a result thereof.

48. Sergeant Foust had never previously been disciplined in any manner by the APD.

49. On or about May 27, 2021, Sergeant Foust learned of the first three internal affairs investigations, all of which were for incidents that occurred in or before August 2020 well before Sergeant Foust left for extended military leave and Captain Stepp entered his chain of command in the Fall of 2020.

50. Internal affairs investigations are coded with a file number based on the date the investigations are opened. The file number for these investigations contained a 2021 date, indicating that the investigations were not initiated until 2021, either during or after Sergeant Foust was on military leave.

51. The first investigation was for conduct that occurred on August 16, 2020, where Sergeant Foust ran his blue lights without a siren and did not wear his seat belt. He admitted to the conduct. His body camera was also not activated. The APD issued him a documented verbal warning for this conduct.

52. Other similarly situated officers were not investigated or disciplined for similar conduct.

53. The second investigation was for conduct that also occurred in August 2020 when Sergeant Foust allegedly did not complete an internal report for a patrol

call. The investigation found, and as explained by Sergeant Foust, that the acting Sergeant was the officer responsible for completing the report, not him, and that Sergeant Foust completed the report anyway.

54. The APD did not issue any disciplinary action against Sergeant Foust as a result of this investigation. Upon information and belief, the APD did not issue a disciplinary action against the employee who had failed to complete the report.

55. Other similarly situated officers were not investigated or disciplined for similar conduct.

56. The third investigation was for conduct related to the protests of 2020 for which he received the officer of the month award. Sergeant Foust's body camera had broken and was rendered inoperable. Sergeant Foust received a documented verbal warning for not having an activated body camera.

57. Other similarly situated officers were not investigated or disciplined for similar conduct. The only other chemical munitions officer to work the protests did not wear a body camera. Command staff and investigating officers have on more than one occasion stated that not having an operable body camera was "not a big deal."

58. Chief Zack himself has told Sergeant Foust that not having an activated body camera was "not a big deal."

59. The fourth investigation was for conduct that occurred on July 1, 2021. He displayed his firearm as a show of force towards a suspect actively breaking into vehicles at a car dealership. His body camera did not record the encounter although

the video dash camera recorded Sergeant Foust turning it on. The APD did not issue any disciplinary action against Sergeant Foust as a result of the investigation.

60. On July 1, 2021, and as a result of this incident, Sergeant Foust learned that APD's body cameras had been changed while he was out on military leave and the APD had yet to conduct training on the new cameras. Unbeknownst to Sergeant Foust, his body camera had been set to "stealth mode," a setting unknown to Sergeant Foust. Stealth mode apparently meant that the body camera was not recording. Sergeant Foust took the camera out of stealth mode and had no more issues with the body camera after July 1, 2021.

61. On August 26, 2021, Sergeant Foust received the two documented verbal warnings for the two incidents in 2020, and, in the same meeting, he learned of the fifth investigation since his return from military leave.

62. The fifth investigation was for conduct that occurred on June 18, 2021. Sergeant Foust was on a call and unavailable when he heard an officer in need of assistance with a vehicle pursuit. He kept waiting for Communications to assign the request for assistance to the two available sergeants, but Communications did not do that. Sergeant Foust therefore terminated the call he was on and went to render aid to his fellow officer. He told the watch commander that he was joining the pursuit but did not tell Communications because doing so would interrupt the pursuing officer's vital radio instructions. The pursuing officer eventually lost the suspect and discontinued the pursuit before Sergeant Foust could actively assist.

63. The APD issued him a Written Warning 1 on October 7, 2021, for not

radioing Communications during this incident, a purported violation of the APD's vehicle pursuit policy.

64. Other similarly situated officers were not investigated or disciplined for similar conduct. Upon information and belief, nobody in Communications was investigated or disciplined for violating the same policy.

65. Sergeant Foust met with Chief Zack on September 1, 2021, to discuss this investigation. Sergeant Foust and Chief Zack had a good conversation, and Chief Zack did not express concern with Sergeant Foust's June 18 conduct. Also during the meeting, Chief Zack reiterated that dealing with people was not one of Captain Stepp's strengths.

66. On September 4, 2021, the APD reassigned Sergeant Foust from Adam District to Baker District. This was a lateral assignment, and he was told the reason for the reassignment was because he had done such a good job leading Adam District.

67. On September 7, 2021, Sergeant Foust learned of the sixth investigation since he returned from military leave.

68. This investigation was for conduct that occurred on June 27, 2021. He and two other officers approached a person who appeared to be passed out in a vehicle. Drugs were observed between the person's legs, and when asked to get out of his vehicle, the suspect attempted to flee. In the process of pursuit, Sergeant Foust's hand got stuck in the steering wheel, injuring his wrist. Sergeant Foust's body camera again did not record the incident as this incident occurred before he

discovered the camera had been set to stealth mode.

69. The APD issued him a Written Warning 1 for this incident on February 8, 2022, for failure to activate his body camera.

70. Other similarly situated officers were not investigated or disciplined for similar conduct.

71. In either late September or early October 2021, Sergeant Foust learned of the seventh investigation since he returned from military leave.

72. This investigation was a show of force investigation and for conduct that occurred on September 5, 2021. He stopped to check on a man's welfare who was walking in the middle of the road. The man started running at Sergeant Foust as if to assault him. The man stopped running, however, and became compliant. Sergeant Foust was not sure what crime, if any, the man had committed and said as much on the scene.

73. Sergeant Foust does not know the results of this investigation. It may still remain pending.

74. Around the middle of September 2021, an officer in Sergeant Foust's chain of command told Sergeant Foust that Captain Stepp looks at his actions closer than other similarly situated employees.

75. Sergeant Foust went on brief military duty starting September 12, 2021. He returned on September 19, 2021.

76. After his return, Sergeant Foust learned that Captain Stepp approved firearms instructor training for a lower ranking officer to take place the same year.

This is the same training that Captain Stepp denied Sergeant Foust on the basis that "we are not sending anyone this year to this school." The stated basis for denying this training was therefore false.

77. Sergeant Foust talked with Captain Stepp on September 28, 2021, where he expressed his frustrations with the APD and her treatment of him. Captain Stepp told him several times in the conversation that he just needed to "show up to work." Except for one day when he was out for medical reasons, he had only ever missed time from work due to military leave.

### APD Attempts to Pronounce Sergeant Foust Unfit for Duty

78. On October 7, 2021, the APD revoked Sergeant Foust's police powers, confiscated his firearm, badge, and vehicle, and placed him on indefinite administrative leave pending a fitness for duty evaluation. The APD scheduled him for a mandatory fitness for duty exam to take place on October 12, 2021.

79. The APD also informed him that two memorandums had been written about him and provided to the APD physician who would conduct the fitness for duty exam. The APD told Sergeant Foust that it would not provide him these memorandums.

80. Being pronounced unfit for duty would result in the termination of Sergeant Foust's employment with the APD.

81. The APD did not have cause to send him for a fitness for duty examination, failed to follow policy in doing so, and only sent him on leave as a pretext to substantiate an intended termination of Sergeant Foust's employment

because of his military leave.

82. Sergeant Foust attended the scheduled fitness for duty examination, and the APD physician told Sergeant Foust that he believed Sergeant Foust was fit for duty. The APD physician, however, told Sergeant Foust that he was referring him for another assessment to be completed by a third party to, in his words, "CYA."

83. Sergeant Foust thus remained on leave and attended the second fitness for duty examination in Charlotte on November 9, 2021. Upon talking to Sergeant Foust and reviewing the information from the APD, the examiner stated that "I thought it was going to be one of these." Sergeant Foust understood this comment to mean that his referral was unnecessary, there were ulterior motives for the referral, and that he was obviously fit for duty. The examiner also stated that the APD would not like his conclusions.

Sergeant Foust Returns from Forced Administrative Leave

84. On December 7, 2021, two months after being placed on administrative leave and only after his attorney asked for a status update on the leave, Sergeant Foust learned that he had been pronounced fit for duty and was to immediately report for duty the next day, December 8, 2021.

85. Due to the injuries to his wrist suffered on June 27, 2021, Sergeant Foust could only return to light duty.

86. As he was walking across the street outside the APD on December 8, 2021, to report for duty, Captain Stepp spotted Sergeant Foust, opened the window to her second-floor office, and yelled outside in front of numerous people, "Well, well,

well, look who came back." She then proceeded to loudly discuss Sergeant Foust's private personnel and medical information through her open window for all to hear.

87. Captain Stepp intended to and did in fact humiliate, embarrass, and disparage Sergeant Foust by yelling these things at Sergeant Foust in such an open forum.

88. Sergeant Foust remained on light duty due to his wrist injury and eventually had surgery on December 10, 2021, for which he took approved medical leave. He returned from medical leave on December 27, 2021, and resumed light duty.

89. At the time of the filing of this complaint, Sergeant Foust remains on light duty for reasons related to his wrist injury.

90. On February 16, 2022, an officer was promoted to Sergeant Foust's position. Sergeant Foust, at this time, is unclear as to whether the APD will allow him to return to his former position as Patrol Sergeant once he heals from his wrist injury.

91. The City and the APD has a history of violating federal law protecting servicemembers. In 2014, the U.S. Department of Labor cited the City for violating the rights of then Lieutenant Bill Wilkie of the APD. The City had placed a memorandum in Lieutenant Wilkie's personnel file instructing him to follow the City's policy when taking military leave.

**CAUSE OF ACTION – USERRA VIOLATION**

92. Plaintiff re-alleges and incorporates by reference all allegations previously set out herein.

93. Chapter 43 of Title 38 of the United States Code, commonly known as the Uniformed Services Employment and Reemployment Rights Act or "USERRA" prohibits employment discrimination against members of the "uniformed service."

94. Sergeant Foust has and does perform service in the uniformed services as defined by 38 U.S.C. § 4303. He is therefore protected from employment discrimination because of his service in the uniformed service.

95. The City is an "employer" as defined by 38 U.S.C. § 4303 and is therefore prohibited from discriminating against employees because of their service in the uniformed service.

96. USERRA states that "[a] person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation." 38 U.S.C. § 4311(a).

97. Sergeant Foust is a "person" who falls within this statute.

98. USERRA further provides that "an employer may not discriminate in employment against or take any adverse employment action against any person because such person…has exercised a right provided for in this chapter." 38 U.S.C. § 4311(b).

99. Sergeant Foust exercised his rights provided for in USERRA.

100. Sergeant Foust's service in the uniformed services was a motivating factor in the APD's harassing, discriminatory, and retaliatory treatment of Sergeant Foust described herein in violation of 38 U.S.C.§ 4311(c). The APD's treatment of Sergeant Foust as set out herein created an objective and subjective hostile work environment for Sergeant Foust. The APD further denied Sergeant Foust his full reemployment, retention, promotion, and other benefits of employment because of his service in the uniformed services.

WHEREFORE, Plaintiff prays that this Court:

1. Enter an injunction ordering the City and the APD to comply with USERRA;

2. Enter an injunction to cease all discriminatory acts against Sergeant Foust and treat him like any other employee of his rank and position as if he had not been or currently is a member of the uniformed services;

3. Enter an injunction ordering the City to restore Sergeant Foust to the same position, rank, job responsibilities, and benefits of employment that Sergeant Foust held prior to his leave in the Fall of 2020;

4. Enter an injunction ordering that the City remove all administrative investigations and disciplinary actions referenced herein from Sergeant Foust's personnel file;

5. Require the City to compensate Sergeant Foust for any loss of wages or benefits and liquidated damages for the same;

6. Award reasonable attorney fees and costs pursuant to 38 U.S.C. § 4323(h);

7. Allow a jury trial; and

8. For such other or further relief as this court shall deem just and appropriate.

This the 24th day of February, 2022.

                                      /s/ Robert C. Carpenter
                                      Robert C. Carpenter
                                      N.C. State Bar No. 36672
                                      Allen Stahl & Kilbourne, PLLC
                                      20 Town Mountain Road, Suite 100
                                      Asheville, NC 28801
                                      828-254-4778
                                      828-254-6646 fax
                                      bcarpenter@asklawnc.com